## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ALICE RADEN and BOBBIE MOORE, individually and on behalf of all others similarly situated, | Case No.: 4:16-cv-12808 |
| | Hon. Linda V. Parker |
| Plaintiffs, | |
| v. | |
| MARTHA STEWART LIVING OMNIMEDIA, INC., a Delaware corporation, and MEREDITH CORPORATION, an Iowa corporation. | |
| Defendants. | |

## PLAINTIFFS' UNOPPOSED MOTION FOR AND BRIEF IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

<u>**Respectfully submitted by:**</u>

Ari J. Scharg
ascharg@edelson.com
Schuyler R. Ufkes
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Eve-Lynn J. Rapp
erapp@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Henry M. Scharg
hmsattyatlaw@aol.com
LAW OFFICE OF HENRY M. SCHARG
718 Ford Building
Detroit, Michigan 48226
Tel: (248) 596-1111
Fax: (248) 671-0335

*Proposed Class Counsel*

## PLAINTIFFS' MOTION FOR
## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Alice Raden and Bobbie Moore hereby move the Court to grant their Motion for Preliminary Approval of Class Action Settlement. Specifically, Plaintiffs respectfully request that the Court (i) certify the proposed Direct Purchaser Settlement Class and Indirect Purchaser Settlement Class (the "Settlement Classes") for settlement purposes, (ii) find that the proposed Settlement is fair, adequate, and reasonable, sufficient to warrant notice to the proposed Settlement Classes (iii) approve the form and content of the notice to the members of the Settlement Classes, (iv) appoint Plaintiff Alice Raden as Class Representative of the Direct Purchaser Settlement Class, and appoint Plaintiff Bobbie Moore as Class Representative of the Indirect Purchaser Settlement Class, (v) appoint Ari J. Scharg, Eve-Lynn J. Rapp, and Schuyler R. Ufkes of Edelson PC as Class Counsel, and (vi) schedule a Final Fairness Hearing in this matter. In accordance with Local Rule 7.1(a), Defendants will not oppose the relief sought by this Motion. (*See* Parties' Class Action Settlement Agreement, ¶¶ 7.1-7.2, 10.1.).)[1]

---

[1]    A copy of the Parties' Class Action Settlement Agreement ("Settlement" or "Agreement") is attached hereto as Exhibit 1. Except as otherwise indicated, all defined terms used herein shall have the same meanings ascribed to them in the Parties' proposed Settlement Agreement.

For the reasons discussed in the accompanying brief, the Motion should be granted.

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**STATEMENT OF ISSUES PRESENTED**

1.     Do the proposed Settlement Classes meet Federal Rule of Civil

Procedure 23's requirements for class certification for settlement purposes?

**Plaintiffs' Answer: Yes.**

2.     Should Plaintiffs' counsel be appointed as Class Counsel?

**Plaintiffs' Answer: Yes.**

3.     Based on an initial evaluation, is the proposed Settlement fair,

adequate, and reasonable, sufficient to warrant notice to the proposed Settlement

Classes?

**Plaintiffs' Answer: Yes.**

4.     Does the Notice Plan satisfy the requirements of Federal Rule of Civil

Procedure 23 and Due Process?

**Plaintiffs' Answer: Yes.**

**CONTROLLING AND MOST APPROPRIATE AUTHORITIES**

Fed. R. Civ. P. 23

Michigan's Preservation of Personal Privacy Act, M.C.L. §§ 445.1711–15

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455 (2013)

*Beattie v. CenturyTel, Inc.,* 511 F.3d 554 (6th Cir. 2007)

*Coulter-Owens v. Time, Inc.*, 308 F.R.D 524 (E.D. Mich. 2015)

*Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006)

*Gilkey v. Central Clearing Co.*, 202 F.R.D. 515 (E.D. Mich. 2001)

*In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326 (E.D. Mich. 2001)

*In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161
     (E.D. Mich. Aug. 2, 2010)

*Merenda v. VHS of Mich., Inc.,* 296 F.R.D. 528 (E.D. Mich. 2013)

*Powers v. Hamilton Cnty. Public Defender Comm'n*, 501 F.3d 592 (6th Cir. 2007)

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012)

## TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................... 1

II.  BACKGROUND ................................................................................ 5

    A.  Michigan's Preservation of Personal Privacy Act ........................ 5

    B.  Plaintiffs' Allegations ...................................................................... 5

    C.  The Litigation History and Settlement Discussions ...................... 7

III.  TERMS OF THE SETTLEMENT ................................................. 11

    A.  Class Definitions ............................................................................ 11

    B.  Monetary Relief ............................................................................. 11

    C.  Prospective Relief .......................................................................... 12

    D.  Release ............................................................................................ 12

    E.  Notice and Administration Expenses ........................................... 13

    F.  Incentive Award, Attorneys' Fees and Expenses ........................ 13

IV.  THE PROPOSED SETTLEMENT CLASSES ARE APPROPRIATE
    FOR CERTIFICATION FOR SETTLEMENT PURPOSES ............... 14

    A.  The Numerosity Requirement Is Satisfied ................................... 15

    B.  The Commonality Requirement Is Satisfied ................................ 16

    C.  The Typicality Requirement Is Satisfied ...................................... 17

    D.  The Adequacy Requirement Is Satisfied ...................................... 19

    E.  The Proposed Settlement Classes Meet the
    Requirements of Rule 23(b)(3) ..................................................... 22

        1.  *Common Questions of Law and Fact Predominate* ................... 22

      **2.**    *A Class Action Is a Superior Method for Adjudicating This Action* .................................................................. 25

**V.**    **PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL** ................................................................ 27

**VI.**    **THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL** ............................................. 28

**VII.**    **THE NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE** ................................................................ 38

**VIII.**  **CONCLUSION** ........................................................................ 40

# TABLE OF AUTHORITIES

## United States Supreme Court Cases

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ............................................................................... *passim*

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds,*
    568 U.S. 455 (2013) ................................................................................. 14

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974) ................................................................................. 38

*Frank v. Gaos,*
    138 S. Ct. 1697 (2018) ............................................................................... 4

*Tyson Foods, Inc. v. Bouaphakeo,*
    136 S. Ct. 1036 (2016) ............................................................................. 25

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ........................................................................... 16, 22

## United States Appellate Court Cases

*Beattie v. CenturyTel, Inc.,*
    511 F.3d 554 (6th Cir. 2007) .................................................................... 20

*Coulter-Owens v. Time, Inc.,*
    No. 16-1321 (6th Cir. 2016) .............................................................. *passim*

*Coulter-Owens v. Time, Inc.,*
    695 F. App'x 117 (6th Cir. 2017) ............................................................... 8

*Daffin v. Ford Motor Co.,*
    458 F.3d 549 (6th Cir. 2006) ............................................................... 15, 24

*In re Am. Med. Sys., Inc.,*
    75 F.3d 1069 (6th Cir. 1996) ............................................................... 17, 18

*In re Google Referrer Header Privacy Litig.,*
    869 F.3d 737 (9th Cir. 2017) ...................................................................... 4

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) ............................................................... 14, 16

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) .................................................................. 4, 37

*Parker v. Time Warner Entm't Co.*,
    331 F.3d 13 (2d Cir. 2003) .......................................................................... 34

*Pelzer v. Vassalle*,
    655 F. App'x 352 (6th Cir. 2016) ............................................................... 31

*Powers v. Hamilton Cty. Pub. Def. Com'n*,
    501 F.3d 592 (6th Cir. 2007) ..........................................................22, 23, 26

*Senter v. Gen. Motors Corp.*,
    532 F.2d 511 (6th Cir. 1976)................................................................. 19, 20

*United States v. Sanford*,
    476 F.3d 391 (6th Cir. 2007) ...................................................................... 33

*Young v. Nationwide Mut. Ins. Co.*,
    693 F.3d 532 (6th Cir. 2010) ...................................................................... 26

**United States District Court Cases**

*Calloway v. Caraco Pharm. Labs., Ltd.*,
    287 F.R.D. 402 (E.D. Mich. 2012) ....................................................... 26, 27

*Coulter-Owens v. Rodale, Inc.*,
    1:14-cv-12688-RHC-RSW (E.D. Mich.) .........................................3, 15, 36

*Coulter-Owens v. Time Inc.*,
    308 F.R.D 524 (E.D. Mich. 2015) .................................................... *passim*

*Curry v. SBC Comm'ns, Inc.*,
    250 F.R.D 301 (E.D. Mich. 2008) .............................................................. 15

*Date v. Sony Elecs., Inc.*,
    No. 07-15474, 2013 WL 3945981 (E.D. Mich. July 31, 2013) ................... 19

*Davidson v. Henkel Corp.*,
    302 F.R.D. 427 (E.D. Mich. 2014) ............................................................ 15

*Dick v. Sprint Commc'ns Co. L.P.*,
    297 F.R.D. 283 (W.D. Ky. 2014) ............................................................ 32

*Fraley v. Facebook, Inc.*,
    966 F. Supp. 2d 939 (N.D. Cal. 2013) .................................................... 4, 37

*Gilkey v. Cent. Clearing Co.*,
    202 F.R.D. 515 (E.D. Mich. 2001) ............................................................ 18

*Halaburda v. Bauer Publ'g Co, LP*,
    2:12-cv-12831 (E.D. Mich.) ............................................................ *passim*

*Harris v. comScore, Inc.*,
    292 F.R.D. 579 (N.D. Ill. 2013) ............................................................ 21

*Higgins v. TV Guide Magazine, LLC*,
    No. 2:15-cv-13769 (E.D. Mich. 2018) .................................................... 15, 21

*In re Cardizem CD Antitrust Litig.*,
    312 F.R.D. 36 (D.N.H. 2015) ............................................................ 23, 26

*In re Dial Complete Mktg. & Sales Practices Litig.*,
    No. 10-cv-02389, dkt. 69 (N.D. Cal. 2010) ............................................ 32

*In re Facebook Privacy Litig.*,
    No. 10-cv-02389 (N.D. Cal. 2010) ............................................................ 21

*In re Google Buzz Privacy Litig.*,
    2011 WL 7460099 (N.D. Cal. Jun. 2, 2011) ......................................... 4, 37

*In re Netflix Privacy Litig.*,
    5:11-cv-00379 (N.D. Cal.) ............................................................ 4, 24, 37

*In re Packaged Ice Antitrust Litig.*,
    2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) ........................................ 28

*Int'l Union v. Ford Motor Co.*,
    No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006) ................ 19

*IUE-CWA v. Gen. Motors Corp.*,
    238 F.R.D. 583 (E.D. Mich. 2006) ............................................................ 30

*Kinder v. Meredith Corp.*,
    1:14-cv-11284 (E.D. Mich.) ................................................................ *passim*

*Leonhardt v. ArvinMeritor, Inc.*,
    581 F. Supp. 2d 818 (E.D. Mich. 2008) ............................................... 30, 36

*Little Caesar Enters., Inc. v. Smith*,
    172 F.R.D. 236 (E.D. Mich. 1997) ............................................................ 19

*Machesney v. Lar-Bev of Howell, Inc.*,
    292 F.R.D. 412 (E.D. Mich. 2013) ............................................................ 22

*McDonald v. Asset Acceptance LLC*,
    296 F.R.D. 513 (E.D. Mich. 2013) ....................................................... 15, 16

*Merenda v. VHS of Mich., Inc.*,
    296 F.R.D. 528 (E.D. Mich. 2013) ............................................................ 16

*Moeller v. Am. Media, Inc.*,
    No. 5:16-cv-11367-JEL-EAS (E.D. Mich.) ............................................... 31

*Olden v. LaFarge Corp.*,
    472 F. Supp. 2d 922 (E.D. Mich. 2007) ................................................... 36

*Parker v. Time Warner Entm't Co.*,
    239 F.R.D. 318 (E.D.N.Y. 2007) .............................................................. 25

*Perlin v. Time Inc.*,
    No. 16-cv-10635 (E.D. Mich. 2018) ................................................... *passim*

*Reese v. CNH America, LLC*,
    227 F.R.D. 483 (E.D. Mich. 2005) ............................................................ 18

*Sheick v. Auto. Component Carrier, LLC*,
    2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) .......................................... 30

*Supnick v. Amazon.com, Inc.*,
    2000 WL 1603820 (W.D. Wash. May 18, 2000) ....................................... 25

*Taylor v. CSX Transp., Inc.*,
   264 F.R.D. 281 (N.D. Ohio 2007) ............................................................... 17

*Thacker v. Chesapeake Appalachia, LLC*,
   695 F. Supp. 2d 521 (E.D. Ky. 2010) .................................................... 32, 33

*UAW v. Gen. Motors Corp.*,
   2006 WL 891151 (E.D. Mich. Mar. 31, 2006)........................................... 34

**Rules and Statutory Provisions**

M.C.L. § 445 .......................................................................................... *passim*

Fed. R. Civ. P. 12 ............................................................................................ 8

Fed. R. Civ. P. 23 ................................................................................... *passim*

**Other Authorities**

S.B. 490, 98th Leg. Reg. Sess. (Mich. 2016) ........................................... 35

S.B. 984, 99th Leg. Reg. Sess. (Mich. 2018) ........................................... 35

Conte & Newberg,
   4 *Newberg on Class Actions*, § 11.25 (4th Ed. 2002).......................... 28, 38

*Manual for Complex Litig.* § 21.632 (4th ed. 2004)............................... 28

## I.    INTRODUCTION

Plaintiffs Alice Raden and Bobbie Moore ("Plaintiffs") filed a class action lawsuit alleging that Defendants Martha Stewart Living Omnimedia, Inc. ("MSLO") and Meredith Corporation ("Meredith") violated Michigan's Preservation of Personal Privacy Act ("PPPA") by systematically disclosing their customers' magazine subscription histories and personal reading habits to third parties without notice or consent. Defendants publish, as relevant here, the magazine *Martha Stewart Living*, and Raden and Moore, Michigan subscribers to that periodical, sought redress for all Michigan residents who also subscribed to Martha Stewart-branded publications.

After more than two years of hard-fought litigation, including intervening legal developments that posed significant problems for part of Plaintiffs' initial proposed class, the parties have reached a class-action settlement that, if approved, will provide a just monetary and prospective benefit for all Michigan residents who have had their personal information disclosed by Defendants. As discussed in more detail below, the Settlement—which was reached only after significant informal discovery and lengthy arm's length negotiations—is an excellent result for the proposed Direct Purchaser Settlement Class and Indirect Purchaser Settlement Class (the "Settlement Classes").

To facilitate the parties' Settlement, Plaintiffs propose two Settlement

Classes, defined by their relationship with Defendant. One class, the Direct
Purchaser Settlement Class, purchased their magazine subscriptions directly from
Defendants. According to an unpublished Sixth Circuit decision—*Coulter-Owens
v. Time*—these individuals have a claim for damages against Defendants under the
PPPA. The second class, the Indirect Purchaser Settlement Class, has no claim
under that decision, because they purchased their subscriptions through third-party
agents and not from Defendants "at retail" as required under *Coulter-Owens*.

Nevertheless, the Settlement provides valuable relief for each class. First, the
Settlement calls for prospective injunctive relief that benefits both classes:
Defendants have agreed to (i) stop knowingly disclosing its Michigan customers'
protected information to any third-party companies for a period of three years
unless they first obtain customers' express written consent, and (ii) perform annual
audits to ensure their compliance with the Settlement. Defendants have further
agreed to establish a $965,000 non-reversionary Settlement Fund, which will be
used to pay all approved claims by members of the Direct Purchaser Settlement
Class (*i.e.*, those class members who have actionable PPPA claims under *Coulter-
Owens*), notice and administration expenses, an incentive award to Plaintiffs, and
attorneys' fees to proposed Class Counsel as awarded by the Court. Claiming
members of the Direct Purchaser Settlement Class are entitled to a *pro rata* share
of the Settlement Fund, which Class Counsel estimates will be between $50 and

$75, based on claims rates from past PPPA settlements in this District.[2]

The strength of this Settlement becomes crystal clear when compared to other PPPA settlements in this District, many of which adopt the same general structure. For instance, in *Halaburda v. Bauer Publ'g Co., LP*, 2:12-cv-12831, dkt. 68 (E.D. Mich. Jan. 6, 2015), the court approved a settlement under which claiming class members received approximately $74 each. In *Kinder v. Meredith Corp.*, 1:14-cv-11284, dkt. 72 (E.D. Mich. Oct. 5, 2015), and *Perlin v. Time Inc.*, No. 16-cv-10635, dkt. 55 (E.D. Mich. Oct. 15, 2018), the courts approved settlements that paid out approximately $50 to each claiming class member. And, in *Coulter-Owens v. Rodale, Inc.*, 1:14-cv-12688-RHC-RS, dkt. 54 (E.D. Mich. Sept. 29, 2016), the court-approved settlement provided claiming class members about $44 for their claims. The estimated $50 to $75 recovery here meets or exceeds these benchmarks. Further, in all four cases, the prospective relief was very similar to the relief secured here, but didn't provide the additional requirement that Defendants perform annual audits to ensure compliance with their settlement obligations going forward, as here.

The instant Settlement also meets or exceeds privacy settlements reached in

---

[2]      This estimated range is based on a valid claims rate of between 10% and 20% of the Direct Purchaser Settlement Class, which is consistent with past PPPA settlements in this District. *See Perlin*, No. 16-cv-10635, dkt. 55 (achieving claims rate of over 14% in PPPA case).

litigation involving similar statutes that have been approved throughout the country. *See, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 820–22 (9th Cir. 2012) *cert. denied*, 571 U.S. 1003 (2013) (approving a settlement of federal Video Privacy Protection Act ["VPPA"] claims, and directing $9.5 million to *cy pres* as the sole form of monetary relief); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6-7 (N.D. Cal. Mar. 18, 2013) (approving $9 million *cy pres* settlement of VPPA claims); *In re Google Buzz Privacy Litig.*, 2011 WL 7460099, at *3 (N.D. Cal. Jun. 2, 2011) (approving $8.5 million *cy pres* settlement); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939 (N.D. Cal. 2013) (approving privacy settlement providing claimants with a cash payment of $15). While the paradigm in privacy settlements is shifting away from *cy pres* deals to cash to class members, *see In re Google Referrer Header Privacy Litig.*, 869 F.3d 737 (9th Cir. 2017), *cert. granted under the name Frank v. Gaos*, 138 S. Ct. 1697 (2018), there is little question that the instant settlement affords relief to the class well beyond that which is typically secured in the privacy-settlement context.

Given the significant relief secured on behalf of the classes, the Court should not hesitate to find that the Settlement falls well within the range of possible approval. Accordingly, Plaintiffs respectfully request that the Court certify the proposed Settlement Classes, appoint their attorneys as Class Counsel to both Settlement Classes, grant their motion for preliminary approval in its entirety,

4

direct that notice be disseminated to the proposed Settlement Classes, and set a final fairness hearing.

## II.    BACKGROUND

### A.    Michigan's Preservation of Personal Privacy Act

A brief summary of the PPPA will give context to the proposed Settlement. The Michigan legislature passed the PPPA "to preserve personal privacy with respect to the purchase, rental, or borrowing of written materials, sound recordings, and video recordings." M.C.L. § 445.1712. As such, the PPPA provides that:

> a person, or an employee or agent of the person, engaged in the business of selling at retail . . . books or other written materials . . . shall not disclose to any person, other than the customer, a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer.

*Id*. In its original form, the PPPA authorized civil actions to enforce the statute, and provided for the recovery of statutory damages in the amount of $5,000, plus costs and reasonable attorney fees. *See* M.C.L. § 445.1715. A 2016 amendment to the law, however, removed the statutory-damages provision. *Id.* The significance of this change is discussed *infra*.

### B.    Plaintiffs' Allegations

Defendant MSLO is a media and entertainment company best known for its eponymous "Martha Stewart" branded publications. Defendant Meredith Corporation is also a media company and publishes some of the most widely

circulated magazines in the United States, including *Martha Stewart Living* and *Martha Stewart Weddings*. (*See* Plaintiffs' Class Action Complaint, dkt. 1 ["Compl."] ¶ 1.) Customers may purchase subscriptions to *Martha Stewart Living* and *Martha Stewart Weddings* magazine directly from Defendants or through third-party subscription agents like www.magazines.com. (Declaration of Ari J. Scharg in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement ["Scharg Decl."], attached hereto as Exhibit 2, ¶ 2). Plaintiffs allege that no matter how a customer purchases his or her subscription, Defendants collect and maintain information related to their customers' magazine subscription histories and personal reading habits. (Compl. ¶ 26.) To supplement the revenue their magazine subscriptions generate (the number of magazine subscriptions as a whole being down), Defendants disclose sensitive information about their customers, including their names, addresses, demographic information, and the fact that they subscribe to *Martha Stewart Living* or *Martha Stewart Weddings*. (*Id.* ¶¶ 2, 27-29, 63-66, 72). These disclosures can occur in two ways. First, Defendants allegedly trade their customers' protected reading information with data mining companies in exchange for other demographic and lifestyle data that such companies have already gathered (or "mined") on each subscriber. (*Id.* ¶¶ 2, 21, 24, 27, 35-36, 45-46.) Defendants allegedly thereafter "enhance" their own customer profiles with this additional data (e.g., their income levels, religion, ages,

race, political affiliations, travel habits, medical conditions, etc.), rendering this information far more valuable, and then sell the enhanced information to other unrelated third parties for a profit. (*Id.* ¶¶ 2, 18-25, 27, 38, 48, 66, 72.) Plaintiffs allege that these disclosures happen without the knowledge or consent of subscribers, who are never presented with any terms or policies that discuss Defendants' disclosure practices or ask for customer assent to them. (*Id.* ¶¶ 3, 27, 34–39, 68, 69.)

Plaintiffs allege that both Raden and Moore were subject to Defendants' practice of systematically disclosing subscriber information. Raden purchased a subscription to *Martha Stewart Living* directly from Defendants in 2013, after which she alleges her information was disclosed to third parties. (*Id.* ¶¶ 32-39.) Moore initially subscribed to *Martha Stewart Living* through a third-party agent, but renewed her subscription directly with Defendants in 2015. (*Id.* ¶ 42.) Regardless, at all times during her subscription to the magazine, she alleges Defendants disclosed information about her to third parties. (*Id.* ¶¶ 46-49.)

### C.    The Litigation History and Settlement Discussions

Plaintiffs initiated this class-action lawsuit on July 31, 2016, raising claims for violations of the PPPA and for unjust enrichment. (*See id.*) In their Complaint, Plaintiffs defined a putative class of "all Michigan residents who purchased a subscription to *Martha Stewart Living* magazine." (*Id.* ¶ 51.) At the time, pending

in the Sixth Circuit was an appeal in a PPPA case regarding when and from who an individual purchases a magazine "at retail" and thus is entitled to invoke the PPPA's protections. *See Coulter-Owens v. Time, Inc.*, No. 16-1321, *appeal docketed*, Mar. 17, 2016 (6th Cir.).

On September 29, 2016, Defendants moved to dismiss Plaintiffs' claims under Rules 12(b)(1) and (b)(6), arguing that Plaintiffs lacked Article III standing because they had suffered no cognizable injury, that Plaintiffs could not state a claim under the PPPA because the 2016 amendment requiring actual damages applied retroactively to their claims, and that Defendants were not unjustly enriched by their disclosure practices. (Dkt. 11.)

Before the Court ruled on the pending motion, the Sixth Circuit issued its decision in the *Coulter-Owens* appeal. The Sixth Circuit concluded that consumers generally have standing to sue over alleged disclosures of personal information in violation of the PPPA because such an act violates the consumer's substantive privacy rights created by the PPPA and because the actual-damages requirement in the amended PPPA did not apply retroactively. 695 F. App'x 117, 120-21 (6th Cir. 2017). In considering the statute's "at retail" limitation, the court also held that the PPPA's private right of action applies only to sales made by defendants directly to customers, and not to sales made through third-party subscription agents. *Id.* at 122-24.

8

In an order dated July 20, 2017, this Court granted Defendants' motion to dismiss in part. Citing the Sixth Circuit's *Coulter-Owens* decision, the Court concluded that Plaintiffs had standing because they alleged an invasion of their substantive legal interests. (Dkt. 23 at 6-7.) But the Court dismissed Plaintiffs' PPPA claims under the newly amended statute, concluding that the appropriate date to determine whether a statute applies retroactively is the date the lawsuit is filed, rather than the date the claim accrues. (*Id.* at 7-10.) Because the amended statute applied, Plaintiffs' failure to plead actual damages required dismissal. The Court, however, allowed Plaintiffs' claims for unjust enrichment to move forward. (*Id.* at 10-11.) On August 3, 2017, Defendants separately answered the remaining allegations of the Complaint, each denying the claims and raising numerous affirmative defenses. (Dkts. 25, 26.)

On August 7, 2017, Plaintiffs moved the Court to partially reconsider its Order dismissing their PPPA claims. (Dkt. 27.) Plaintiffs argued that their claims are not subject to the amended PPPA, and thus should not have been dismissed for failure to allege "actual damages", because their claims accrued before the statute was amended, and the accrual date—not the date the complaint was filed—controls. (*Id.*) After full briefing, the court ultimately denied Plaintiffs' motion on January 18, 2018. (Dkt. 30.)

The parties then exchanged initial disclosures on February 8, 2018, and soon after, began engaging in settlement discussions and exchanging significant informal discovery related to, *inter alia*, the size and composition of the putative class. (Scharg Decl. ¶ 4.) While still discussing the possibility of early resolution, the parties filed a joint discovery plan on June 25, 2018, and the Court entered a Scheduling Order three days later on June 28, 2018. (Dkts. 40, 41.) That same day, the Court referred the parties to a magistrate judge for a settlement conference to take place on February 11, 2019. (Dkts. 42, 43.)

Over the following months, the parties continued their settlement discussions in an effort to resolve the case without the expense of further litigation, which would necessarily include adversarial class certification, summary judgment briefing, and appeals. (Scharg Decl. ¶ 5.) During these discussions, the parties explored what a settlement resolving the claims of both direct and indirect subscribers might look like, resulting in Defendants providing further informal discovery regarding the number of direct and indirect subscribers and from whom they purchased their subscriptions. (*Id.* ¶ 6.) With that information in hand, and after multiple rounds of arm's-length negotiations between counsel experienced in valuing and negotiating PPPA class settlements, the parties ultimately reached an agreement on the principal terms of the Settlement, which is now before the Court. (*Id.*)

### III.   TERMS OF THE SETTLEMENT

#### A.   Class Definitions

The Settlement provides for two Settlement Classes, defined as follows:

**Direct Purchaser Settlement Class:** All persons with Michigan Street addresses who were subscribers to *Martha Stewart Living* magazine or *Martha Stewart Weddings* magazine between July 31, 2010 and July 31, 2016 and who purchased their subscriptions directly from Martha Stewart or Meredith.

**Indirect Purchaser Settlement Class:** All persons with Michigan Street addresses who were subscribers to *Martha Stewart Living* magazine or *Martha Stewart Weddings* magazine between July 31, 2010 and July 31, 2016 and who purchased their subscriptions from a third party.

(Agreement ¶¶ 1.10, 1.18)[3]

#### B.   Monetary Relief

Defendants shall establish a $965,000.00 non-reversionary Settlement Fund

from which each Direct Purchaser Settlement Class Member who submits a valid

claim shall be entitled to a *pro rata* portion after payment of notice and

---

[3]     Excluded from the Settlement Classes are: (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendants, Defendants' subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendants or their parents have controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the classes; and (4) the legal representatives, successors or assigns of any such excluded persons. (Agreement ¶¶ 1.10, 1.18).)

administrative expenses, attorneys' fees, and an incentive award to the Class Representatives.[4] (*Id.* ¶¶ 1.33, 2.1) No portion of the Settlement Fund will revert back to Defendants. (*Id.* ¶ 2.1) Any class member checks not cashed within 90 days of issuance will, subject to Court approval, revert to the Michigan Bar Foundation's Access to Justice Fund. (*Id.*)

### C.     Prospective Relief

For a period of three years from the date of Preliminary Approval, Defendants agree to not disclose any of their Michigan subscribers' personal reading information to any third-party companies without prior express written consent. (*Id.* ¶ 2.2.) Further, Defendants agree to perform annual audits of their procedures to ensure that they are complying with their obligations under the Settlement, and will correct any deficiencies identified in these audits. (*Id.*)

### D.     Release

In exchange for the relief described above, Defendants and each of their related and affiliated entities (the "Released Parties" defined in ¶ 1.29 of the Settlement) will receive a full release of all claims arising out of or related to

---

[4]     As explained more fully below, the Sixth Circuit's decision in *Coulter-Owens* means that the members of the Indirect Purchaser Settlement Class have no claim for relief under the PPPA. And to be clear, as explained in the notice, individuals who are members of both Settlement Classes may file claims to receive payment for valid direct purchaser claims. (*See* Agreement, Ex. F.)

Defendants' disclosure of their Michigan customers' magazine subscription information. (*See id.* ¶¶ 1.28–1.30.)

### E. Notice and Administration Expenses

The Settlement Fund will be used to pay the cost of sending the Notice set forth in the Agreement and any other notice as required by the Court, as well as all costs of administration of the Settlement. (*Id.* ¶¶ 1.31, 1.33.)

### F. Incentive Award, Attorneys' Fees, and Expenses

In recognition of their efforts on behalf of the Settlement Classes, Defendants have agreed that Plaintiffs Raden and Moore may receive, subject to Court approval, an incentive award of $5,000 each from the Settlement Fund, as appropriate compensation for their time and effort serving as Class Representatives and parties to the Action. (*Id.* ¶ 8.3.) Defendants have also agreed that the Settlement Fund may also be used to pay Class Counsel reasonable attorneys' fees and to reimburse expenses in this Action, in an amount to be approved by the Court. (*Id.* ¶¶ 1.33, 8.1.) Class Counsel have agreed, without discussing the issue at any point before securing the class relief and without any consideration from the Defendants, to petition the Court for no more than 35% of the Settlement Fund. (*Id.* ¶ 8.1) (Scharg Decl. ¶ 6.)

## IV.   THE PROPOSED SETTLEMENT CLASSES ARE APPROPRIATE FOR CERTIFICATION FOR SETTLEMENT PURPOSES

Before the Court can grant preliminary approval of the proposed Settlement and direct notice to the Settlement Classes, Plaintiffs must show "that the court will likely be able to certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). For any class, certification is proper if the proposed class satisfies the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P. 23(a); *see Amgen Inc. v. Conn. Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1191 (2013). Additionally, a class must satisfy the strictures of at least one part of Fed. R. Civ. P. 23(b). Here, Plaintiffs submit the two proposed classes for certification under Fed. R. Civ. P. 23(b)(3). As such, Plaintiffs must also demonstrate that common questions of law or fact predominate over individual issues and that a class action is the superior device to adjudicate the claims of the classes. *Amchem*, 521 U.S. at 615–16. District courts are given broad discretion to determine whether class certification is appropriate. *In re Whirlpool Corp. Front-Loading Washing Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). As explained below, the proposed Settlement Classes satisfy all of the applicable Rule 23 prerequisites, and thus, should be certified.

Notably, in a detailed opinion performing the "rigorous analysis" required by Rule 23, Judge Steeh of this District certified for litigation a class of magazine

subscribers alleging nearly the exact same conduct at issue here—the systematic disclosure of protected subscriber information to third-party companies Acxiom Corporation and Wiland Direct. *Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524 (E.D. Mich. 2015). Likewise, similar classes of magazine purchasers were certified for settlement purposes in the *Halaburda*, *Kinder*, *Rodale* and *Perlin* actions, and most recently in *Higgins v. TV Guide Magazine, LLC*, No. 2:15-cv-13769, dkt. 73 (E.D. Mich. Aug. 18, 2018). *Halaburda*, No. 2:12-cv-12831, dkt. 63; *Kinder*, 2016 WL 454441 (E.D. Mich. Feb. 5, 2016); *Rodale*, 1:14-cv-11284, dkt. 44; *Perlin*, No. 2:16-cv-10635, dkt. 51. Like the classes in those cases, the Settlement Classes here should be certified for settlement purposes.

### A. The Numerosity Requirement Is Satisfied.

The numerosity requirement is met when joining such a large number of plaintiffs in a single suit would be impracticable. Fed. R. Civ. P. 23(a)(1). Although there is no fixed numerical threshold for determining impracticability of joinder, a "'substantial' amount of members will suffice." *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513, 520 (E.D. Mich. 2013), *vacated on other grounds* (citing *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)); *see also Davidson v. Henkel Corp.*, 302 F.R.D. 427, 436 (E.D. Mich. 2014) (certifying a class of 49 plaintiffs); *Curry v. SBC Comm'ns, Inc.*, 250 F.R.D 301, 310 (E.D. Mich. 2008) (noting that 40 class members is sufficient to satisfy the numerosity

requirement). Only a reasonable estimate or some evidence of the number of members in the purported class is required. *McDonald*, 296 F.R.D. at 520.

Here, each of the proposed Settlement Classes easily satisfy Rule 23's numerosity requirement: Defendants' records indicate that approximately 55,176 Michigan residents fall within the Direct Purchaser Settlement Class and another 81,538 fall within the Indirect Purchaser Settlement Class. (Scharg Decl. ¶ 8.) Thus, there is no question that joinder of all members of the Settlement Classes would be impractical and numerosity is, therefore, satisfied.

### B.    The Commonality Requirement Is Satisfied.

The second requirement for certification mandates that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied when the claims depend on a common contention, the resolution of which will bring a class-wide resolution of the claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011). The threshold for demonstrating the commonality requirement is not high, as "complete identity of issues is not required," *Merenda v. VHS of Michigan Inc.*, 296 F.R.D. 528, 536 (E.D. Mich. 2013), and is satisfied when there is one question common to the class, the resolution of which will advance the litigation. *See Whirlpool Litig.*, 722 F.3d at 852–53.

Here, there are several questions common to both proposed Settlement Classes. First, did the Defendants have a common practice of disclosing

16

information about subscribers? Plaintiffs allege that it was Defendants' practice to disclose information about each and every subscriber. Whether that is true is common to the classes. *See Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 289 (N.D. Ohio 2007) (noting that whether a question is common is measured from the standpoint of the plaintiff's legal theory). Second, assuming that the answer to the first question is yes, do these records "personally identif[y]" the subjects of the information as having subscribed to a particular magazine, as required by the statute? *See* MCL § 445.1712(1). Third, did Defendants provide any notice of their practices, or obtain consent to them? *See* MCL § 445.1713(a). Plaintiffs are prepared to show that Defendants provided form disclosures to each member of both Settlement Classes, making this a question amenable to classwide resolution.

Answering each of these questions, which are central to the claims of each class member, would resolve significant issues in this case for every member of both proposed classes. As such, the commonality requirement is satisfied.

### C.    The Typicality Requirement Is Satisfied.

The next prerequisite—typicality—requires that class representatives have claims that are typical of those of the putative class members. Fed. R. Civ. P. 23(a)(3). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re*

*Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996). The test for typicality is not demanding and does not require the interests and claims of the plaintiffs to be identical. *Reese v. CNH America, LLC*, 227 F.R.D. 483, 487 (E.D. Mich. 2005). "Typicality may be presumed when the plaintiff's claim 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members'" *Gilkey v. Cent. Clearing Co.*, 202 F.R.D. 515, 524 (E.D. Mich. 2001) (citation omitted). In other words, when the basis of the suit is the defendants' systematic business practices towards the named plaintiffs and the members of the proposed classes, typicality is satisfied.

Here, Plaintiffs allege that Defendants' disclosure of their personal reading information is not a one-off situation unique to them, but rather that Defendants have a regular practice of disclosing their customers' subscription information to third parties without consent. (Compl. ¶¶ 2, 18-25, 27, 38, 48, 66, 72.) No matter the person—whether it be Raden, Moore, or other members of the putative classes—the disclosures are made in the exact same manner and for the exact same purpose. And, because Plaintiffs allege that such conduct violates the PPPA, their claims are undoubtedly typical of the other putative class members because everyone was subjected to the same alleged unlawful conduct (i.e., Defendant's allegedly unlawful disclosures). Accordingly, by pursuing their own claims in this matter, Plaintiffs will necessarily advance the interests of the Settlement Classes,

and typicality is therefore satisfied. *See, e.g., Coulter-Owens v. Time, Inc.*, 308 F.R.D 524, 534–35 (E.D. Mich. 2015) (finding typicality met where "plaintiff and the proposed class purchased . . . magazines . . . in the same manner . . . and defendant allegedly disclosed each plaintiff's 'record or information concerning the purchase' to Acxiom or Wiland."); *Date v. Sony Elecs., Inc.*, 2013 WL 3945981, at *3 (E.D. Mich. July 31, 2013) ("Because all Class Members' claims arise from the same course of conduct . . . their claims are based on the same legal theory and the typicality requirement, which is not onerous, is met."); *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 243 (E.D. Mich. 1997) (finding typicality met where "the class representatives' claims [arose] from the same events, legal documents, and consequences and legal theories affecting all [class members]").

### D.     The Adequacy Requirement Is Satisfied.

The final Rule 23(a) prerequisite requires a finding that the class representatives have and will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The two criteria for determining whether class representatives are adequate are (1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Int'l Union v. Ford Motor Co.*, 2006 WL 1984363, at *19 (E.D. Mich. July 13, 2006) (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir.

1976). Adequacy exists when the named plaintiff is a part of the class, possesses the same interest, suffered the same injury, and thus, seeks the same type of relief as the other class members. *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562 (6th Cir. 2007) (quoting *Amchem*, 521 U.S. at 625–26).

In this case, Raden and Moore—like each and every member of the proposed Settlement Classes—are Michigan customers who subscribed to a Martha Stewart-branded publication and then allegedly had their subscription information disclosed to third parties without consent. (Compl. ¶¶ 32, 36-37, 42, 46-47.) Like the Direct Purchaser Settlement Class, Raden and Moore both purchased at least one subscription directly from Defendants. (Scharg Decl. ¶ 3.) Like the Indirect Purchaser Settlement Class, Moore also purchased a subscription through a third party. (*Id.*) Thus, each named plaintiff's interests in pursuing relief from Defendants for alleged violations of the PPPA is aligned with the interests of absent class members in both classes.

Likewise, proposed Class Counsel—Ari J. Scharg, Eve-Lynn J. Rapp, and Schuyler R. Ufkes of Edelson PC—have extensive experience litigating class actions of similar size, scope, and complexity to the instant action. (Scharg Decl. ¶ 11.) They regularly engage in major complex litigation involving consumer privacy, including recent PPPA cases, have the resources necessary to conduct litigation of this nature, and have been appointed lead class counsel by courts in

20

this District and numerous others throughout the country. (*See* Firm Resume of Edelson PC, attached hereto as Exhibit 2-A); *see also Coulter-Owens,* 308 F.R.D. at 535–36 (achieving adversarial class certification with the court noting that Edelson PC "is qualified to serve as class counsel especially given counsel's prior experience in handling a class action lawsuit dealing with the same claims before this court."); *Higgins*, No. 2:15-cv-13769, dkt. 73 (appointing Edelson PC as class counsel in PPPA settlement); *Perlin*, No. 2:16-cv-10635, dkt. 51 (same); *Halaburda*, No. 2:12-cv-12831, dkt. 63 (same); *Harris v. comScore, Inc.*, 292 F.R.D. 579, 581 (N.D. Ill. 2013) (achieved adversarial certification in the largest-ever privacy class action and appointed class counsel); *In re Facebook Privacy Litig.*, No. 10-cv-02389, dkt. 69 (N.D. Cal. 2010) (noting that the attorneys at Edelson are "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue").

Further, proposed Class Counsel have devoted substantial resources to prosecuting Defendants for their allegedly unlawful disclosure practices, including investigating Plaintiffs' and the Settlement Classes' claims against Defendants, aggressively pursuing those claims through motion practice, engaging in extensive settlement discussions, and ultimately, negotiating the Settlement now before the Court, which brings real and substantial relief to the classes. (Scharg Decl. ¶ 12.) In sum, proposed Class Counsel have vigorously prosecuted this action and will

continue to do so throughout its pendency. (*Id.*)

Accordingly, since Plaintiffs and proposed Class Counsel have demonstrated their commitment to representing the Settlement Classes and neither have interests antagonistic to the Settlement Classes, the adequacy requirement is satisfied.

### E. The Proposed Settlement Classes Meet the Requirements of Rule 23(b)(3).

#### 1. *Common Questions of Law and Fact Predominate*

Rule 23(b)(3)'s predominance requirement focuses on whether the defendants' liability is common enough to be resolved on a class basis, *Dukes*, 564 U.S. at 359, and whether the proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The Rule 23(b)(3) predominance requirement is akin to the commonality requirement of Rule 23(a) in that both require the existence of common questions of law and fact—however, Rule 23(b) imposes the more stringent requirement that common issues predominate over individual issues. *Machesney v. Lar-Bev of Howell, Inc.*, 292 F.R.D. 412, 423 (E.D. Mich. 2013). In other words, where commonality is satisfied when there is a single factual or legal question common to the class, the "predominance requirement is met if this common question is at the heart of the litigation." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). Common issues are at the heart of a case when there is generalized evidence that would prove or disprove an element of the action on a class-wide

basis. *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 339 (E.D. Mich. 2001); *see also Powers*, 501 F.3d at 619 (noting that "[c]ases alleging a single course of wrongful conduct are particularly well-suited to class certification").

In this case, there are numerous common factual and legal questions that are at the center of this action, including (1) whether Defendants are "engaged in the business of selling at retail . . . written materials," (2) whether Defendants disclosed "information concerning the purchase . . . of those materials by a customer" to third parties, (3) whether the disclosed records or information indicated the customers' identities, (4) whether Defendants obtained written permission prior the disclosures, (5) whether all the disclosures were made "for the exclusive purpose of marketing goods and services directly to the consumer," and if so, (6) whether Defendants accurately informed their subscribers that they could remove their names at any time from the disclosed subscriber lists. M.C.L. § 445.1712.

Each of these questions can be answered on a class-wide basis using the same evidence regarding Defendants' practices. *See Coulter-Owens*, 308 F.R.D. at 532–34 (certifying class in similar case because the litigation was "driven by issues that are common to the entire putative class."). For instance, whether Defendants are engaged in the business of selling magazine subscriptions at retail will be the same for every member of the Settlement Classes (though the evidence suggests

that the answer will be different for the two proposed classes). And, because of Defendants' allegedly standardized disclosure practices, a single merits proceeding also can resolve whether the information disclosed by Defendants is the type protected by statute and for what purpose Defendants made those disclosures. Finally, because the terms of each subscription were identical or materially so, a single trial also will resolve whether Defendants obtained consent from any member of either Settlement Class to disclose this information. *See Daffin*, 458 F.3d at 552 (question involving interpretation of form contract common to proposed class).

Numerous federal courts have similarly held that cases like this one—in which defendants are accused of uniformly disclosing information protected by a privacy statute—raise common issues of fact or law. *See, e.g., Coulter-Owens*, 308 F.R.D. at 532–34; *Kinder*, 2016 WL 454441, at *1 (E.D. Mich. Feb. 5, 2016) (finding that "the course of Meredith's conduct with customer purchasing information and the applicability of [the PPPA] to that conduct" raises common questions of law and fact); *In re Netflix Privacy Litig.*, 2012 WL 2598819, at *3 (N.D. Cal. July 5, 2012) ("There are questions of law or fact common to class members because all claims for relief arise from [defendant's] stated policy for and a uniform practice of retaining and disclosing [statutorily-protected information]— affecting all those individuals in the same way.") (internal citation omitted);

*Parker v. Time Warner Entm't Co.*, 239 F.R.D. 318, 329 (E.D.N.Y. 2007) (commonality established where "the claims are derived from the same legal theory and based upon the same factual question—whether class members were injured because of [defendant's] disclosure of their [statutorily protected information] without properly notifying them of that practice"); *Supnick v. Amazon.com, Inc.*, 2000 WL 1603820, at *1 (W.D. Wash. May 18, 2000) (finding commonality established where the defendants engaged in common course of conduct toward every member of proposed class: disclosing their personal information without consent). The same reasoning holds true here: Defendants' allegedly standardized practices permit resolution of all critical merits issues with respect to the claims of each and every class member. Thus, "central issues in the action are common to the class and can be said to predominate." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).

## 2.    *A Class Action Is a Superior Method for Adjudicating This Action*

The class action device is also the superior means of adjudicating this controversy because it "achieve[s] economies of time, effort and expense and promote[s] . . . uniformity of decision as to persons similarly situated." *Amchem*, 521 U.S. at 615. Class actions are preferred over small, individual suits for damages because they provide a mechanism through which individuals who, under other circumstances, would not have the opportunity to seek redress from the

defendant through litigation, can do so. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2010); *see also Amchem*, 521 U.S. at 617. Actions alleging a standard course of wrongful conduct are particularly well-suited for class certification because they facilitate efficiency and uniformity. *Young*, 693 F.3d at 545; *see also Powers*, 501 F.3d at 619 ("Cases alleging a single course of wrongful conduct are particularly well-suited to class certification."). As the district court held in *Coulter-Owens*, "given the commonalities, it makes sense to proceed as a class action and address the issues one time rather than [in] potentially hundreds of separate cases." 308 F.R.D. at 536. And in the context of certifying a class for settlement purposes, "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

Here, all questions necessary to determine whether Defendants violated the PPPA are common to all members of the Settlement Classes. As such, a class action is a much more efficient use of judicial and party resources than multiple actions. *See In re Cardizem*, 200 F.R.D. at 351. Further, absent a class action, members of the Settlement Classes would almost certainly find the cost of individually litigating their claims to be prohibitive. Indeed, no other member of the proposed Settlement Classes has brought any PPPA claims against Defendants, and thus, "there is no indication that any class member wants to individually

26

control his or her own separate action." *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 408 (E.D. Mich. 2012).

In the end, because common questions predominate and a class action is the superior method for adjudicating the controversy, maintenance of this action as a class action is appropriate.

## V.  PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint counsel . . . [with the] ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court considers proposed Class Counsel's: (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

As discussed above, proposed Class Counsel have extensive experience in prosecuting consumer class actions in general, and privacy class actions specifically. (*See* Scharg Decl. ¶ 11; *see also* Exhibit 2-A.) And as a result of their zealous efforts, proposed Class Counsel have secured a settlement that provides substantial monetary relief to the Direct Purchaser Settlement Class, as well as the prospective relief necessary to protect the privacy of all members of the Settlement

Classes going forward. Thus, the Court should appoint Ari J. Scharg, Eve-Lynn J. Rapp, and Schuyler R. Ufkes of Edelson PC, as Class Counsel.

## VI.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

The procedure for review of a proposed class action settlement is a well-established two-step process—preliminary and final approval—which was recently codified under Rule 23(e). Fed. R. Civ. P. 23(e)(1)-(2) (eff. Dec. 1, 2018); *see* Conte & Newberg, 4 *Newberg on Class Actions*, § 11.25, at 38–39 (4th ed. 2002). The first step is a "preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible approval." *In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010). The Manual for Complex Litigation characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by a court on the basis of written submissions and informal presentations from the settling parties. *Manual for Complex Litig.* § 21.632 (4th ed. 2004).

Before the Court can grant preliminary approval and direct notice to the classes, Plaintiff must "show[] that the court will likely be able to approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2) (eff. Dec. 1, 2018). Approval under Rule 23(e)(2) requires that the settlement be fair, reasonable, and adequate taking into consideration the following factors: (1) whether the class representative and class counsel have adequately represented the class; (2) whether

the settlement was negotiated at arm's length; (3) whether the settlement treats class members equitably relative to each other; and (4) whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2) (eff. Dec. 1, 2018). The proposed Settlement in this case—which provides both monetary payments and strong prospective relief even to individuals who might not be able to state a claim under governing Sixth Circuit law—easily satisfies these factors.

First, Plaintiffs and proposed Class Counsel adequately represented the Settlement Classes throughout the litigation. As detailed above, over the past two years, Plaintiffs and proposed Class Counsel have tirelessly prosecuted Defendants for their alleged PPPA violations in an effort to secure meaningful monetary and prospective relief for the classes. This has required them to embark on a fact-intensive investigation of Defendants' practices, engage in dispositive motion practice challenging the merits of the case and the standing of Plaintiffs, exchange significant informal discovery geared towards understanding the size and composition of the classes and confirming the factual bases for their claims, and engage in meaningful settlement discussions and numerous rounds of arm's-length negotiations. (Scharg Decl. ¶¶ 4–6, 12.) In the end, if the Settlement is approved, the Settlement Classes will reap its valuable benefits thanks to Plaintiffs' and Class Counsel's hard work pursuing this case and representing their interests.

29

Second, the Settlement was negotiated at arm's length by experienced counsel representing adversarial parties. Indeed, both proposed Class Counsel and defense counsel have significant experience litigating PPPA class actions, and both have vigorously pursued their clients' interests and positions throughout the litigation, as reflected by the docket in this case. (Scharg Decl. ¶ 13.) *See Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008) (finding adversarial nature of the litigation supported the "arm's length" factor of settlement approval). And when the parties were finally ready to discuss settlement, their respective counsel engaged in several rounds of arm's-length negotiations building upon previously approved settlement structures, and neither side discussed the issue of attorneys' fees until after the class relief had been negotiated and secured. (Scharg Decl. ¶ 6.) *See Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) (explaining that arm's-length negotiations conducted "by adversarial parties and experienced counsel" are indicative of a settlement's fairness, reasonableness, and adequacy); *see also IUE-CWA v. Gen. Motors Corp.,* 238 F.R.D. 583, 597–98 (E.D. Mich. 2006) (observing that courts presume an absence of fraud or collusion absent evidence to the contrary).

Third, the Settlement treats members of the Settlement Classes equitably relative to each other: each member of the Direct Purchaser Settlement Class and

Indirect Purchaser Settlement Class is entitled to identical prospective relief, and

each member of the Direct Purchaser Settlement Class is entitled to a single, *pro*

*rata* cash payment from the Settlement Fund, estimated to be $50–75 per claimant.

(Agreement ¶ 2.1–2.2.)

Finally, the relief provided for the Settlement Classes is beyond adequate—

especially taking into account the costs, risks, and delay of further litigation—and

demonstrates that the proposed Settlement falls well within the range of possible

approval.[5] Here, while Plaintiffs and proposed Class Counsel are confident in

Plaintiffs' claims, they are cognizant of the risks that would accompany further

litigation. (Scharg Decl. ¶ 14.) For instance, further litigation in this Court would

---

[5]     The other "sub-factors" to be considered within this factor—the
effectiveness of distributing relief to the class, the terms of the proposed attorneys'
fee award, and any agreements in connection with the settlement—also weigh in
favor of settlement approval. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Direct
Purchaser Settlement Class Members who submit valid Claim Forms for payment
will be mailed a check within 60 days after the Effective Date. (Agreement ¶ 2.1.)
The Settlement limits any attorneys' fee award to 35% of the Settlement Fund,
which is in line with fee awards in similar PPPA cases in this District. *See, e.g.*,
*Perlin*, No. 16-cv-10635, dkt. 55 (awarding 40% of the common fund); *Kinder*,
No. 13-cv-11284, dkt. 81 (awarding 35%); *Moeller v. Am. Media, Inc.*, No. 5:16-
cv-11367, dkt. 42 (E.D. Mich.) (awarding 35%). And the only agreement in
connection with the Settlement relates to the timing of any attorneys' fee payment,
which is incorporated into Section 8 of the Agreement and does not affect the relief
provided to the class. *See Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016)
("The quick-pay provision does not harm the class members in any discernible
way, as the size of the settlement fund available to the class will be the same
regardless of when the attorneys get paid.").

have focused on Plaintiffs' only remaining claims: those for unjust enrichment. While several courts have permitted such claims to proceed past the pleadings stage, (*see* dkt. 23 at 11 n.3 (noting that "[t]his Court is not alone in finding a successfully pled unjust enrichment claim through the unlawful disclosure of individuals' personal reading information," and citing similar PPPA cases)), there is a relative dearth of on-point precedent adjudicating such claims on the basis of a full factual record. And even if these claims were shown to have merit on an individual basis, certifying a class based solely on individuals' claims for unjust enrichment is a notoriously uncertain enterprise. *See, e.g.*, *In re Dial Complete Mktg. & Sales Practices Litig.*, 312 F.R.D. 36, 62-63 (D.N.H. 2015) (explaining the several individualized issues inherent in any unjust-enrichment claim). Also uncertain is the likelihood of Plaintiffs reviving their PPPA claims, which would have required an appeal surrounding an unsettled question of Michigan law—namely, what is the key date for measuring whether a statute's application is retroactive? As the parties' briefing on Plaintiffs' motion for reconsideration makes clear, (*see* dkt. 27 at 6–7; dkt. 29 at 3–5), there is little precedent on that issue as well, adding to the inherent uncertainty of an appeal. *See Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 295 (W.D. Ky. 2014) (concluding that a settlement was adequate in part because "even were the class to succeed at trial, appeals would likely delay meaningful relief"); *Thacker v. Chesapeake*

32

*Appalachia, LLC*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010) (highlighting risks associated with litigating unsettled issues of state law, noting that "a resolution of these issues by the Court would have constituted a significant risk for the [c]lass"). And as for the Indirect Purchaser Settlement Class, any appeal would require contending with the Sixth Circuit's unpublished decision from the *Coulter-Owens* matter, which as discussed, foreclosed indirect purchasers' PPPA claims because they did not purchase their subscriptions "at retail" as required under the statute. Although the Sixth Circuit's earlier decision does not bind future panels, and thus the indirect purchasers could convince an appellate panel to overrule *Coulter-Owens*, *see, e.g.*, *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007) (noting that unpublished dispositions are "not precedentially binding under the doctrine of stare decisis"), that task would not be an easy one.

Moreover, Defendants have made clear that absent a settlement, they would continue their vigorous defense of the case in this Court and in the Sixth Circuit if necessary. (Scharg Decl. ¶ 15.) Indeed, Defendants raised numerous affirmative defenses in response to the Complaint, challenging, *inter alia*, Plaintiffs' standing to assert their unjust enrichment claims. (*See* dkts. 25, 26.) And if Plaintiffs were to appeal their dismissed PPPA claims—as they planned to—Defendants were sure to mount a robust defense. (Scharg Decl. ¶ 15.) Assuming those claims were revived by the Sixth Circuit, Defendants would again contest their PPPA liability, likely

arguing that the PPPA neither prohibits the disclosure of the magazine subscription information at issue (because the recipients of the disclosures are their agents), nor applies to Defendants at all because they are not engaged in the business of selling magazines "at retail," as is required to come under the scope of the statute. (*Id.*) And, despite the Sixth Circuit's holding in *Coulter-Owens* finding Article III standing, the issue would continue to loom over this case given the unpublished nature of the decision, posing risks to the continued maintenance of this case as a class action. (*Id.*)

And of course, without a settlement, there would be the uncertainty and expense of trial, the risks and delay of post-judgment motions practice, and an inevitable appeal of a host of issues. *See UAW v. Gen. Motors Corp.*, 2006 WL 891151, at *17 (E.D. Mich. Mar. 31, 2006) ("The obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement."). And should Plaintiffs succeed in reviving their PPPA claim on appeal and then win at trial, post-judgment motions practice almost certainly would have included litigation over the size of the judgment, which would have run into the hundreds of millions. Courts have reasoned that "the potential for a devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues." *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 22 (2d Cir. 2003). Motion practice over the constraints of due

process, or perhaps the appropriateness of a remittitur, would have consumed valuable time, and further delayed any recovery. (*See* Scharg Decl. ¶ 16.) And, of course, these issues would be folded into an appeal, adding another layer of uncertainty to continued litigation.

Finally, the time further litigation would consume is particularly important in this context because since 2016 there have been multiple bills introduced by industry groups seeking to weaken the protections and remedies available under the PPPA. Many of these bills, if enacted, could strip the classes of any statutory damage remedy. The Court is already aware of the July 2016 amendment repealing the PPPA's statutory-damages provision, and the parties' disagreement about its applicability to this case. *See* S.B. 490, 98th Leg. Reg. Sess. (Mich. 2016). That entire debate is at risk of being mooted by another bill that was introduced on May 8, 2018 that would repeal the statutory damages provision retroactively, meaning that even if Plaintiffs are correct about the operation of the existing amendment, it wouldn't matter. *See* S.B. 984, 99th Leg. Reg. Sess. (Mich. 2018).

Given these concerns, Plaintiffs and proposed Class Counsel view the creation of the non-reversionary $965,000.00 Settlement Fund—with an estimated $50 to $75 per claimant payment—as well as the required injunctive relief, to be a significant victory for the classes. (Scharg Decl. ¶ 7.) This is especially true considering (i) the Direct Purchaser Settlement Class is recovering significant

35

monetary relief for their PPPA claims despite those claims being dismissed and (ii) the Indirect Purchaser Settlement Class is receiving valuable injunctive relief despite having no viable PPPA claim under current Sixth Circuit jurisprudence. The significance of the Settlement is even more apparent considering the "all or nothing" nature of Plaintiffs' claims: if they were to lose any aspect of this case, the class would get nothing. *See Leonhardt*, 581 F. Supp. 2d at 833 ("The parties recognize, and the Court concurs, that continued litigation would be a high stakes 'zero sum' undertaking, in which one party is likely to achieve complete victory while the opposing party experiences complete defeat because the parties' core positions . . . are irreconcilable."); *see also Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922, 933 (E.D. Mich. 2007) ("The fact that the settlement amount may equal but a fraction of potential recovery does not render the settlement inadequate. Dollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.") (internal quotation omitted).

Further, in terms of monetary relief, the Settlement's projected $50 to $75 per-claim payment is in line with (and in some instances exceeds) other privacy settlements involving similar statutes that have been approved in this District and throughout the country. *See, e.g.*, *Rodale, Inc.*, 1:14-cv-12688, dkt. 54 (approving PPPA settlement paying $44 per claimant); *Kinder*, 1:14-cv-11284, dkt. 81

(approving PPPA settlement that provided claimants with $50 and similar injunctive relief); *Perlin*, 2:16-cv-10635, dkt. 55 (same); *Halaburda*, 2:12-cv-12831, dkt. 68 (approving PPPA settlement that provided claimants with $74); *Fraley*, 966 F. Supp. 2d at 948 (approving settlement providing claimants with a cash payment of $15 in right to publicity case with potential statutory damages of $750); *Lane*, 696 F.3d at 820-22 (approving a $9.5 million settlement payment to *cy pres* as the sole form of monetary relief in case involving VPPA claims); *In re Netflix Privacy Litig.*, No. 5:11-cv-00379, dkt. 256 (N.D. Cal. March 18, 2013) (approving $9 million settlement payment to *cy pres* as the sole form of monetary relief in case involving VPPA claims); *In re Google Buzz Privacy Litig.*, 2011 WL 7460099, at *3 (approving $8.5 million payment to *cy pres* as the sole form of monetary relief in ECPA case with potential statutory damages of $10,000). Thus, the relief provided to the Settlement Classes is eminently fair, adequate, and in line with the results achieved by other statutory privacy class actions that have received final approval from courts in this District and across the country.

For these reasons, Plaintiffs and proposed Class Counsel firmly believe that the monetary and prospective relief provided by the Settlement weighs heavily in favor of a finding that it is fair, reasonable, and adequate, and well within the range of possible approval. (Scharg Decl. ¶ 17.) The Court should grant preliminary approval.

## VII.  THE NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE

Rule 23 and Due Process require that for any "class proposed to be certified for purposes of settlement under Rule 23(b)(3)[,] the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1). Notice may be provided to the class via "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B) (eff. Dec. 1, 2018). The substance of the notice to the settlement classes must describe in plain language the nature of the action, the definition of the classes to be certified, the class claims and defenses at issue, that class members may enter an appearance through counsel if so desired, that class members may request to be excluded from the settlement classes, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. P. 23 (c)(2)(B). Notice is "adequate if it may be understood by the average class member." *Newberg*, § 11:53 at 167.

Here, the parties have agreed upon a multi-part notice plan that easily satisfies the requirements of both Rule 23 and Due Process. First, the professional

Settlement Administrator—Heffler Claims Group—will send direct notice by email to all members of the Direct Purchaser Settlement Class and Indirect Purchaser Settlement Class for whom a valid email address is identified in Defendants' records.[6] (Agreement ¶ 4.1(b); *see* Exhibits 1-B, 1-C.) The emails to the Direct Purchaser Settlement Class will contain an electronic link to the online Claim Form. (Agreement ¶ 4.1(b); *see* Exhibit 1-B.) Next, the Settlement Administrator will send direct notice by First Class U.S. Mail to all members of the Direct Purchaser Settlement Class and Indirect Purchaser Settlement Class who did not receive an email. (Agreement ¶ 4.1(c); *see* Exhibits 1-D, 1-E.) The mail notice sent to Direct Purchaser Settlement Class will include a postcard Claim Form with prepaid return postage. (Agreement ¶ 4.1(c); *see* Exhibit 1-D.) Further, the Settlement Administrator will establish a Settlement Website that shall contain the "long form notice" (*see* Exhibit 1-F), as well as access to important Court documents and upcoming deadlines, and will allow Direct Purchaser Class Members to file Claim Forms online. (Agreement ¶ 4.1(d).) Finally, the Settlement Administrator will also provide notice of the Settlement to the appropriate state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. §

---

[6] Defendant Meredith has indicated that it has valid deliverable email addresses for 31,160 members of the Direct Purchaser Settlement Class (or 56.5%) and for 45,346 members of the Indirect Purchaser Settlement Class (or 55.6%). (Scharg Decl. ¶ 9.)

1715. (*Id.* ¶ 4.1(e).)

In sum, the proposed methods for providing notice to the Settlement Classes comports with both Rule 23 and Due Process, and thus, should be approved.

**VIII.   CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order (i) granting preliminary approval of the parties' proposed Class Action Settlement Agreement, (ii) certifying the proposed Settlement Classes for settlement purposes, (iii) approving the form and content of the notice to the members of the Settlement Classes, (iv) appointing Plaintiffs Alice Raden and Bobbie Moore as Class Representatives, (v) appointing Ari J. Scharg, Eve-Lynn J. Rapp, and Schuyler R. Ufkes of Edelson PC as Class Counsel, (vi) scheduling a final fairness hearing in this matter, and (vii) providing such other and further relief as the Court deems reasonable and just.[7]

Respectfully submitted,

Dated: December 10, 2018      **ALICE RADEN** and **BOBBIE MOORE**, individually and on behalf of classes of similarly situated individuals

By: /s/ Ari J. Scharg
     One of Plaintiffs' attorneys

---

[7]      Although Plaintiffs understand the Court generally prepares its own orders, they intend to submit a proposed Preliminary Approval Order for the Court's convenience and to propose future case deadlines.

Ari J. Scharg
ascharg@edelson.com
Schuyler R. Ufkes
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Eve-Lynn Rapp
erapp@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Henry M. Scharg
hmsattyatlaw@aol.com
LAW OFFICE OF HENRY M. SCHARG
718 Ford Building
Detroit, Michigan 48226
Tel: (248) 596.1111
Fax: (248) 671.0335

*Proposed Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, Ari J. Scharg, an attorney, hereby certify that on December 10, 2018, I served the above and foregoing ***Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement*** on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF filing system.

<u>/s/ Ari J. Scharg</u>